Parker and Pringle contended that the United States were clearly entitled to a preference, under the act of congress of the third March, 1797, (Laws of U. S. 3 vol. p. 420 ;) and in support of his argument, produced the opinion of the Supreme Court of the United States, delivered by Marshall, C. J., in the case of the United Stales v Fisher et al. assignees of Blight, a bankrupt, in manuscript,since reported in 2 Crunch,358 and seg., and insisted that the judgment of the Supreme Court of the United States was conclu-give in this casé; and that foreign, as well as domestic creditors, ar© *120 within the scope of the act; and as well all other public creditors, as revenue officers.
The counsel for the defendants contended that the preference, give by the act of congress, is unconstitutional ; that the creation of such a prerogative was not warranted by the spirit or literal expression of the constitution, and ought not to be sanctioned by the judiciary ; that it is of a harsh and odious complexion, not to be seen in the English constitution ; for where the King has a concurrent right with his subjects, he has a preference, but not where his right is inferior, or posterior, in time; that the decisions of the Supreme Court of the United States are not to be regarded as authority, though certainly entitled to high respect; that the constitution does not authorize the National Legislature, to use any means, to carry into effect the powers given them, but only such means as are properly adapted to the end; and the means here used, of strengthening the government and providing a revenue for the general welfare, are not such as are proper, or in the spirit of the constitution. That admitting congress were authorized by the constitution to pass the act, yet the defendants had a lien on the property attached, which could not be discharged or defeated by the claim of the United States. The act of congress cannot be construed to alter the attachment law of this State, cited 4 D. and E. 402. The opinion of the Supreme Court is not consistent. It supplies, by ingenuity, the provision which the political forecast of the legislature had neglected to furnish. The title of the act of congress must be kept in view in expounding the act. The fifth section ought to be construed in connection with it, and the other sections which relate to the same point. But the Supreme Court has said the fifth section is an independent and substantive clause ; which is not reasonable and consistent with the sound rules of construction. The fifth section has for its object the recovery of debts spoken of in the foregoing sections. Revenue officers are those which were in contemplation as receivers of public monies ; and the preference ought to be restricted to this class of creditors. The word aforesaid ought to be understood, though it is not introduced in the fifth section. There is a confusion, and want of logical deduction, in the judgment of the Supreme Court. It labors to extend the meaning of the act of congress to all classes of public creditors contrary to the true design and object of the act. The fifth section ought not to be interpreted as introducing any other public creditors as within the operation of the act, which are not comprehended in the other sections of the act. Why should it be so? But if.the act can *121 be made to regulate any other subject than the external revenue, it must be considered as repealed by the act ot congress of 1799; for until 1798, no act has passed on the subject of internal revenue, See 4 vol. Laws U. S. 446. But the United States waived their r , . ,. . preference, by coming m as common creditors. The District At. torney of New York, as authorized agent of the United States, relinquished the right of preference, if any existed, and consented to receive a dividend along with the other creditors of the bankrupt, pari passu. And, besides, the debt of the United States, being a foreign debt, is not within the act of congress. The creditors were not only foreign creditors, but they are 4o be considered as private trustees, and not public agents.
PitiNGLE, in reply, answered the arguments of the defendants’ counsel at great length. He laid stress on the words, “ indebted by bond, or otherwise,” and “ other person, or persons,” in the act of congress of 1797, to shew that other than public officers, or agents, were meant to be included in the act. But he insisted, that Bird, Savage and Bird, were receivers of public money, within the express meaning of the act, if every description of creditors of the United States were not intended to be embraced. It is of extreme national importance to guard against the peculation of foreign creditors, and of more importance, in a national point of view, to es. tablish a preference in such cases, than in respect to petty officers of the revenue. It involves the interests of the several States, who would have to supply the deficiency by taxation. The argument against the constitutionality of the law, would apply equally to many other acts of congress. It is rather an argument against the exercise of the right to pass the law, than against the right itself. Vested rights are not touched by it, but are expressly reserved. An attachment creates no lien, gives no right to the thing seized by attachment. It is only a service of process, to make the defendants parties to answer the demand. At best, it is but a qualified lien, which vests no right to the thing itself, which is attached. The right of the United States could not be relinquished by the District Attorney. He had no authority to surrender the right. But he did no act which can be construed to a relinquishment of the right of preference. It was right to discharge the bail, but this did not discharge the debt. The District Court of New York still retained the cause. Cited 2 Ves. jr., to shew that bail are favored where there are no laches. 8 Wils. 308.
The case was adjourned, for consideration, and was held under advisement for near a year. In the mean time the parties agreed *122 to submit it to the determination of the Supreme Court of the United States, connected with other questions, which were involved *n matters in controversy between the parties, and it went off the docket of the Constitutional Court. Some of the judges seemed t0 opinion the United States were not entitled to the preference claimed, and others doubted. A majority, it was believed, entertained a different opinion. The opinion of Bkevakd, J., which was formed very soon after the argument, is as follows.
Several questions arising out of the special verdict, have been made and argued, which ought to be determined by this court, in delivering its judgment in this case.
The United States claim 'a preference and priority in the payment and satisfaction of debts due to the United States, to every other creditor under the 5th section of an act of congress, passed in 1797, providing for the settlement of accounts between the United States and receivers of the public money. To this claim the defendants object. 1. Because they contend, that the 5th section of the said act is unconstitutional. The power to make the provision made by this section, is, in my opinion, fairly comprehended in the general powers delegated to congress by the federal constitution. The operation of it, cannot, as far as l am capable of foreseeing, destroy, or infringe any of the rights of the citizen, intended to be secured by the constitution. Absolute vested rights cannot be affected. Sound policy, and the general good, require that debts due to the public should be first paid, in preference to the debts of private individuals. There is nothing in this, novel or alarming. It is a political regulation, which obtains in every State, and is founded in wise policy. I can see no danger to be apprehended from the operation of it. It does not appear to me in the light of an odious and unjust privilege ; but as one necessary, and proper, for the welfare of the State, and the safety of every member of civil society. The constitution of the United States, art. 1, sec. 8, declares, that “The congress shall have power to lay and collect taxes, duties, imposts, and excises, and pay the debts, and provide for the common defence and general welfare of the United States ; and to make all laws which shall be necessary and proper for carrying into execution the foregoing power, and all other powers vested by the constitution in the government of the United States, or in any department or officer thereof.” The powers here given to con. gress, to provide for the common defence and general welfare, must certainly be construed to extend to other objects, besides those which are particularly specified in the enumeration of particular powers inserted in the same section; but though expressed in ge. *123 neral and indefinite terms, there is no dan'ger of its being employed to sanction the exercise of unlimited power, or any power not within the spirit of the constitution, or inconsistent with the other powers particularly specified; especially, as the amendments which have been adopted as part of the constitution, seem to have sufficiently guarded it from any encroachment from this quarter. A positive specification, of all the powers necessary for the common defence and general welfare, was impossible from the nature of the subject. Those necessary, and accommodated to the existing state of things, might not be pYoper or sufficient to answer future exigencies. The power exercised by Congress, in the enactment of the law in question, seem to me to be no encroachment upon any power or right intended to be reserved to the several States, or to the people. The provision made by it may, in some degree, be conducive to the common defence and general welfare. It would be difficult to find any specific power in the constitution, to authorize the act respecting fugitiv.es from justice, and persons escaping from the service of their masters, and many other acts of Congress which might be mentioned, the propriety of which has not been questioned.
Another objection is, that, admitting the constitutionality of the law, the claim in question cannot be admitted, inasmuch as the case is not within the scope and intention of the law, 1. Because the debtor of the United States was not a revenue officer, or other public officer of the United States ; and 2. Because he was a foreigner and resident without the limits of the United States. This objection cannot, in my opinion, prevail. In my judgment, the law must be construed to extend to debtors of the United States generally ; but at any rate, to receivers of the public money, whether officers or not, if entrusted by the United States with the receipt or application of public monies. It is found, by the special verdict, that the debtors of the United States, Bird, Savage and Bird, received the money, claimed by the United States, as bankers in London, for the use of the United States, from the department of State. I am, therefore, of opinion, clearly, that the case is within the intent of the law. I can perceive no ground of reason or policy, which should induce this court to confine the construction and operation of the act of Congress to domestic debtors, only; nor is there any thing in the act itself, which forbids its application to foreign debtors resident abroad. But if it were necessary to confine the construction to debtors within the United States, yet the objection in the present case would not be valid, because, from the special ver- *124 appears that the debtors, one of them at least, were resident in New York. As a commercial company established in New York, they might well be considered to be there resident, and answerable for debts contracted in the limits of the country, where . , 4 . they may be called on civilly to answer, m due course of law.
Another ground, on which the claim of the United Stntes has been resisted, is, that the defendants, by the first service of their affidavit, acquired a prior lien on the effects of their debtor, which cannot be divested or impaired by the operation of the act of Congress. This objection is founded on a principle which is not admitted, and cannot, in my opinion, be maintained. The service of an attachment creates no lien on the propertj1" attached. At any rate, the lien, if any is created in such case, is only conditional and qualified. It is not an absolute lien, or vested right, but a partial and conditional right to hold the property in gage, by way of distress to compel the debtor to answer the plaintiff’s demand. It does not op. erate to vest any right of property, but only to authorize the credit- or to seize and keep in his possession, or rather in the custody and possession of the law, the estate and effects of his absent or absconding debtor, in order to compel the debtor to appear and answer personally the creditor’s demand. If the debtor appears and puts in bail; or if any appears for him, and enters sufficient bail, the attachment is thereby dissolved, or the lien discharged. If the credit- or fails in his suit, the lion is discharged. The first attaching creditor may acquire a prior lieu, or right to hold the property taken by attachment by way of pledge or fund, for the satisfaction of his claim against other creditors, whose attachments are posterior in time to his ; but this arises from the rule, that he, who is first in time is first in right, and not because he has any specific lien, or vested right, as to the property attached. The levy, or service of an attachment, is to be considered as the inception of the suit, and superior diligence intilles to a priority to receive satisfaction. But the act of congress is positive, in extending the right of priority to cases in which the estate and effects of an absconding, concealed, or absent debtor, shall be attached by process of law. The cases cited from the English books, which relate to the royal prerogative, do not apply, for there is no act of Parliament, that gives the preference and priority which is given by the act of Congress.
The next, and last objection to the right claimed by the United States, is, that the right vvas waived, or surrendered, by the attorney of the United States for the district of New York, in the part he took under the commission of bankruptcy. If the District At *125 torney had been competent to compromit the interest of the United States by any act of his in the way that it has been supposed he did, yet I cannot discover any thing in his conduct which can be construed into any such waiver or relinquishment of the right in question, as has been insisted on, viewing the United States in the light oí a common creditor. Yet, it seems to me, they were author, ized by the act of congress to elect whether to waive their dividend, after proving their debt under the constitution, and proceed against the bankrupt, or accept their dividend. But the attorney of the United States had no power or authority to compromit the interest of the United States by any act of his, in the matter in question : First, because it was not a power within the scope of tho authority delegated to him; and, secondly, because it would have been directly contrary to an express provision of the bankrupt law of congress, which declares, that nothing therein contained shall in any manner affect the right of preference to prior satisfaction of debts due the United States, as secured or provided by any law heretofore passed. The District Attorney was, therefore, incompetent to yield up or impair the right in question.